729 So.2d 634 (1999)
STATE of Louisiana
v.
Romalis M. COOK.
No. 98-KA-848.
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1999.
*635 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant D.A., Thomas J. Butler, Quentin R. Kelly, Gretna, La, for Plaintiff-Appellee.
Sandra C. Jenkins, Louisiana Appellate Attorney, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., MARION F. EDWARDS and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Romalis Cook, with five counts of first degree robbery in violation of LSA-R.S. 14:64.1. However, count five was subsequently amended to the reduced charge of attempted first degree robbery. LSA-R.S. 14:27:64.1. The matter thereafter proceeded to a bench trial. At the conclusion of the proceedings, the judge found defendant guilty as charged. The court sentenced defendant to thirty-five (35) years at hard labor on each of the first four counts, without *636 benefit of parole, probation, or suspension of sentence, and to twenty (20) years at hard labor as to count five. The judge ordered that the sentences be served concurrently.
The state subsequently filed a bill of information seeking to have defendant adjudicated a multiple offender pursuant to LSA-R.S. 15:529.1. After a hearing, the court found defendant to be a third felony offender and imposed an enhanced sentence of life imprisonment. The defendant now appeals.

FACTS
The defendant was convicted of five separate offenses occurring on three different days.

Count One
On July 19, 1997, Latanya Ketchens was working as a cashier at an Exxon filling station at the corner of Belle Chasse Highway and Wall Boulevard in Gretna. She testified that she saw a black man walk inside the building, look around, then walk out. The man returned a short time later carrying a chrome-plated gun in a bag, and wearing sunglasses and a multi-colored welder's hat. He ordered Ketchens to put all the money from the cash register into his bag. The cashier complied, giving defendant four hundred thirty dollars ($430.00). Investigating officers obtained a surveillance tape from the Exxon station, and it was played for the court at trial. Ms. Ketchens testified that the tape accurately depicted the robbery.
On September 10, 1997, Ms. Ketchens identified defendant, Romalis Cook, in a photographic lineup. She also identified defendant at trial. Ms. Ketchens identified a gun seized from defendant's residence as the gun defendant used in the robbery.

Count Two
Lorna Moore, a teller at a Westbank Expressway branch of Hibernia Bank, testified that on July 22, 1997, she saw a man wearing sunglasses and a green or yellow hard hat enter the bank and offered him assistance. The man gave her a piece of paper on which was written, "Bitch, if I go to jail, you're going to hell." In the note the man also demanded currency in 20's and 100's. Ms. Moore testified that the man continually grabbed a bulge in his shirt, and that she believed the bulge was a gun. Ms. Moore gave the man about one thousand five hundred dollars ($1,500.00), and he ran from the building. She further stated that she was unable to make an identification from a photographic lineup. She did, however, positively identify defendant in court as the man who robbed her.
Betty Higgins, a paying and receiving clerk at Hibernia, testified that she saw the robber come into the bank twenty to thirty minutes before the robbery. He asked her whether he could cash a check there, and Ms. Higgins told him he could do so only if he was an account holder. The man then left the bank. She noticed that when he returned to the bank, he approached another teller. Ms. Higgins later learned the teller had been robbed. At trial, Higgins tentatively identified defendant as the man she saw that day. She also recognized a bandanna and a pair of sunglasses seized from defendant's house as those worn by the man she saw at the bank.
Ena Evans, another Hibernia employee, testified that she also remembered a man who entered the bank on July 22, 1997 and inquired about cashing a check. She stated that the man left the bank, and returned fifteen to twenty minutes later. Evans saw the man go to Ms. Moore's teller window, then run from the building. Evans testified that, due to the robber's disguise, she would not recognize him if she saw him again.

Count Three
On August 5, 1997, Trina Gardner was working as a teller at the Dryades Savings Bank on Lapalco Boulevard. A man entered the bank and told her he wanted to cash a check. She recognized him as a man who had been in the bank a week before to inquire about opening a checking account. The man approached her holding a piece of paper. When Ms. Gardner tried to take the paper from him, he told her, "Bitch, don't act like you don't understand. You know what this is all about." The man ordered Gardner to open her cash drawer and to give him "all hundreds." The teller complied, and defendant departed. Ms. Gardner told police that the robber had on a hat, glasses, and a green *637 uniform. She identified defendant in a photographic lineup on August 6, 1997, and identified him in court as the man who robbed her.
Andrea Bass, another Dryades employee, saw defendant enter the bank on August 5, and recognized that he was robbing Ms. Gardner. She immediately pressed the alarm button. Ms. Bass testified that the robber took three hundred dollars ($300.00). At trial, she identified a photograph of the robber taken by the bank's surveillance camera. She also identified defendant in court as the robber. Deborah Dulich testified that she was working at Dryades on August 5, 1997, and that she saw a man enter the bank and hand Ms. Gardner a piece of paper. Because of the man's nervous demeanor, she immediately suspected he was robbing Gardner. Dulich identified defendant from a photographic lineup as the man she saw on August 5, 1997. She also identified him in court as the robber.

Count Four
Roshawn Davis testified that on August 5, 1997, she worked as a teller at Deposit Guaranty Bank on South Clearview Parkway in Metairie. She was approached by a black male in a work uniform. The man handed her a note in which he demanded money. She opened her cash drawer and began to slowly gather money. The man told her, "You don't have to die over this." Davis gave the man nearly three thousand dollars ($3,000.00). The robber then left the bank. Ms. Davis testified that the man appeared to have a gun hidden under his shirt. Davis stated that she would not recognize the robber if she saw him again, because he wore a disguise.
Suzette Michelet, another Deposit Guaranty employee, witnessed the August 5 robbery. She testified the robber wore khaki clothes, a welder's cap and sunglasses. She identified defendant in court as the man who robbed Davis.

Count Five
Deanne Dendinger, an employee of Ace Cash Express on Terry Parkway in Terrytown, testified that she was unlocking the building on the morning of August 5, 1997, when a black male attempted to force his way through the door. The man ordered her to go to the area where the money was kept. Dendinger pushed the alarm button, and the man fled. She testified that the robber's shirt was open, and his hand was tucked into his pants as if he carried a gun. Ms. Dendinger identified defendant from a photographic lineup, and also identified him in court as the man who accosted her on August 5, 1997.

Investigation
Detective George Giron of the sheriff's office robbery division testified that he participated in defendant's arrest. When defendant was apprehended, officers recovered one thousand nine hundred dollars ($1,900.00) in cash from his person. Search warrants were executed at defendant's residence and automobile, and several items were seized. Among the items seized were sunglasses, a bandanna, and work pants and shirts. Surveillance photographs were obtained from Dryades and Hibernia.
On the night of August 6, 1997, Detective Daniel O'Neil advised defendant of his Miranda rights, then conducted a tape-recorded interview with him. Detective Giron, and Agent Kurt Hemphill of the Federal Bureau of Investigation were also present. During the interview, defendant admitted to the robberies at Exxon, Dryades, Hibernia, and Deposit Guaranty. He admitted to having used a BB gun in the Exxon robbery. He further admitted to having implied he had a weapon during the Deposit Guaranty robbery, although he denied he actually had one. Defendant denied either having a weapon or implying one during the Hibernia and Dryades robberies. Defendant denied having robbed Ms. Dendinger at Ace Cash Express. He stated that he simply approached her to inquire about a pay day loan. Ms. Dendinger panicked, and he left the store. Defendant identified himself as the subject pictured in the Hibernia and Dryades surveillance photographs.
In his trial testimony, defendant denied committing any of the robberies. He stated that the officers who interviewed him forced him to confess through threats. The defendant testified that he was at a barber shop *638 most of the day on July 19, 1997. Ralph Thomas of Houma Industries in Harvey testified that the company's employment records showed defendant worked for eleven hours on July 22, 1997, and that he did not leave the premises for lunch. Thomas stated, however, that it is not unusual for an employee to leave the grounds for lunch without punching his time card. Carisa Cook, defendant's wife, testified that she and defendant went shopping between 9:00 a.m. and 5:00 p.m. on August 5, 1997, and that defendant did not leave her company during that period.

MOTION TO SUPPRESS
In his first assignment of error, defendant argues that the trial court erred by failing to rule on his motion to suppress the statement prior to trial.
In the present case, defendant filed a motion to suppress on November 17, 1997. On April 13, 1998, prior to the commencement of trial, defense counsel stated:
In chambers, I advised the Court that I do have an outstanding motion to suppress a statement given by Mr. Cook and more than one photographic identification. It is my understanding, Your Honor, that those matters will be incorporated within the body of the trial itself, to which I have no objection.
The defendant's confession was subsequently admitted as evidence at trial, over defendant's objection that it was coerced. As shown by the foregoing language, defendant did not object to the deferral of the motion hearing, and in fact affirmatively agreed to it. Accordingly, he did not preserve the issue for appeal. LSA-C.Cr.P. art. 841A. In any event, defendant's argument has little merit.
The trial court's failure to hold a motion hearing prior to trial does not affect the defendant's substantial rights, provided the matter is properly disposed of at trial. See State v. Long, 408 So.2d 1221 (La. 1982); State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, writs denied, 95-1677 (La. 3/22/96), 669 So.2d 1222, 96-0041 (La. 3/29/96), 670 So.2d 1237. The state produced sufficient evidence at trial to show that the recorded statement defendant made to officers on August 6, 1997 was properly obtained, and was thus admissible. Detective O'Neil testified that he advised defendant of his rights before beginning the interview. The defendant indicated he understood his rights and that he wished to waive them and make a statement. The state produced a waiver of rights form signed by defendant. Both O'Neil and Detective Girod testified that the statement was not coerced. As the state's rebuttal witness, Agent Hemphill of the F.B.I. testified that he was present during the entire interview, and that he did not observe any threats or coercion.
Based on the foregoing, we find that defendant's motion to suppress the confession was properly disposed of at trial, and that defendant was therefore not prejudiced by the trial court's failure to hold a pre-trial motion hearing.

SUFFICIENCY OF THE EVIDENCE
In his second assignment of error, defendant challenges the sufficiency of the evidence used to convict him of counts three, four, and five. The constitutional standard for testing the sufficiency of the evidence enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La. 1986).
As to count three, the incident at Dryades Savings Bank, defendant argues that there was no evidence at trial that the victim, Trina Gardner, believed he was armed with a dangerous weapon. First degree robbery is defined in LSA-R.S. 14:64.1 A as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." This statute requires the state to prove the defendant induced a subjective belief in the *639 victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. In State v. Fortune, 608 So.2d 148 (La. 1992), the Supreme Court stated:
Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery.
We acknowledge that there was no testimony from the victim, Trina Gardner, or from eyewitnesses Andrea Bass and Deborah Dulcich, that they believed defendant had a weapon. However, Ms. Gardner did immediately comply with the defendant's demands. Also, defendant's actions in this case were sufficient to cause Ms. Bass to press the bank's alarm button. Given these circumstances, it can be inferred that the victim, Ms. Gardner, believed defendant had a dangerous weapon during the course of the robbery.
As to count four, the incident at Deposit Guaranty Bank, defendant contends that the state also failed to prove the implied weapon element. The victim, Roshawn Davis, testified that in the course of her encounter with the robber, he told her, "You don't have to die over this." Davis testified that defendant jiggled his shirt, and that she believed he was carrying a weapon under the shirt. This testimony is clearly sufficient to prove defendant induced a subjective belief in the victim that he was armed with a dangerous weapon, and that such a belief was reasonable under the circumstances.
The defendant further urges as to count four that the state failed to prove identity. In addition to proving the elements of the charged offense, the state is required to prove the identity of the perpetrator. State v. Bovie, 95-474 (La.App. 5 Cir. 11/28/95), 665 So.2d 558. Roshawn Davis, the victim of the Deposit Guaranty robbery, testified that it is doubtful she would recognize the perpetrator if she saw him again, since he wore a disguise during the robbery. However, eyewitness Suzette Michelet testified at trial that she is "[a]bout ninety percent sure" that defendant is the man who robbed Ms. Davis.
Deputy Ron Ainsworth, a crime scene technician with the Jefferson Parish Sheriff's Office, recovered latent fingerprints from Ms. Davis' teller station. Deputy Virgil McKenzie, an expert in latent fingerprint identification, testified that he compared the latent prints from a set of fingerprints obtained from defendant. He was able to match one of the prints from the bank to defendant's left little finger. This evidence, viewed in a light most favorable to the state, was sufficient to prove defendant was the person who committed the robbery at Deposit Guaranty Bank.
As to count five, the incident at Ace Cash Express, defendant contends the state failed to prove he took anything of value, or that he was armed with a dangerous weapon. Because defendant was charged with attempted first degree robbery in count five, the state had only to prove that defendant committed an act in furtherance of committing a robbery, and not that he actually took something of value. LSA-R.S. 14:27. Deanne Dendinger testified that defendant tried to push his way into the business as she was entering in the morning, although she told him it was not yet open to customers. The defendant told her to "go in the back with the money." The defendant's attempt to enter Ace Cash Express before it was open for business, and his order to Ms. Dendinger to "go in the back with the money" can be interpreted as an act in furtherance of a robbery.
Ms. Dendinger testified that defendant had his shirt open, and that he placed his hand in his pants as if he had a gun. Dendinger immediately pressed the "panic" button, and defendant fled. The victim's belief that defendant had a gun was reasonable under the circumstances. We find this evidence sufficient to support defendant's conviction for attempted first degree robbery.
Considering the foregoing, we conclude that there was sufficient proof for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find that the defendant was guilty of the *640 charged offenses. Accordingly, we reject the arguments raised by defendant in this assigned error.

MULTIPLE OFFENDER ADJUDICATION
In his third assignment of error, defendant argues that the trial court erred in adjudicating him a third felony offender. In light of the error patent discussion which follows, this issue need not be presently addressed.

ERRORS PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSC.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La. 1975). Such a review reveals that the trial court, in imposing defendant's original sentences, failed to observe the appropriate statutory delays. LSA-C.Cr. P. art. 873 provides, in pertinent part, that "[i]f a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence." The purpose of this delay is to allow the defendant time to file post-trial motions, including a motion for new trial, which must be filed between verdict and sentencing. If a defendant does not expressly waive the delay, a sentence imposed within the three day period is void. State v. Johnson, 275 So.2d 405 (La. 1973); State v. Thom, 615 So.2d 355 (La.App. 5 Cir. 1993). In the present case, there is no indication that defendant waived the three day delay mandated by LSA-C.Cr.P. art. 873. Therefore, the sentences imposed by the trial judge immediately after the defendant's convictions are void and must be vacated. We further note that when the trial judge imposed the enhanced sentence, he stated, "Alright, at this time the Court vacates the previously given sentence of thirty-five years, and sentences Romalis Cook in accordance with the provisions of the Habitual Offender Law ..." As defendant had four thirty-five year sentences, and the trial judge did not specify which one he wished to vacate, the multiple offender sentence is ambiguous and we likewise find it necessary to vacate that sentence.
Based on the foregoing discussion, we affirm the defendant's convictions but vacate the sentences imposed and remand the matter for further proceedings in accordance with this opinion.
CONVICTIONS AFFIRMED; SENTENCES VACATED; MATTER REMANDED.