768 So.2d 767 (2000)
STATE of Louisiana, Appellee,
v.
Robert L. JACKSON, Appellant.
No. 33,837-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
*769 Peggy J. Sullivan, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, William Robert Coenen, Jr., District Attorney, Penny Wise Douciere and Thomas Eugene Allen, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, C.J., and GASKINS and PEATROSS, JJ.
NORRIS, Chief Judge
Robert L. Jackson was convicted of first degree robbery, a violation of La. R.S. 14:64.1, and sentenced to 15 years at hard labor without the benefit of probation, parole or suspension of sentence. Raising several assignments of error, Jackson appeals his conviction and sentence. We affirm.

Facts
On April 16, 1998, Jackson entered the First Republic Bank in Rayville, Louisiana, a bank with video surveillance equipment. He handed a note to bank teller Geraldine McGee, which stated:
I have a gun on my right hip and gasoline in my jacket. If you make any suspicious moves other men and women may blow. (YOU TOO!) I want ($50,000) on the counter now. Touch any security button and they can't save you. TRUST ME, I'M NO JOKE!
In response to the note, McGee wrote back that she did not have that much money in her drawer. Jackson then wrote on the note that McGee should "go get it."
In response to Jackson's instruction, McGee went to the bank vault to get more cash. Following bank procedure, McGee stopped at the office of Cheryl Newcomer, the bank's assistant vice president in charge of branch operations, to ask her to come with her to the vault to verify funds. Newcomer followed McGee into the vault while Jackson waited outside the vault gate. When they were inside the vault, McGee handed the note to Newcomer; Newcomer told McGee that they should give Jackson the money. They proceeded into the inner vault area and began to accumulate bundles of $100 bills totaling $5,000 per bundle to put into a white bank bag.
While Jackson stood outside the vault he was approached by bank teller Shirley Lane, who asked if she could help him. The bank's Executive Vice President, Timmie Thames, witnessed this and testified that Jackson indicated to Lane that he was being helped. Lane told Jackson that he should wait in the seating area. Apparently, Jackson moved away from the vault gate only momentarily and then returned. Thames then asked Jackson if he could help him but Jackson did not reply. *770 Thames told Jackson that he would have to take a seat in the waiting area. As Thames approached him, Jackson stated "No, you need to come here," and when Thames was within a few feet of him, Jackson opened his jacket and Thames testified he saw the handle of a gun protruding from the left inside pocket of Jackson's jacket.
About this time, Newcomer had come from the inside vault closer to the vault gate in an attempt to warn Thames. When Thames walked away from him, Jackson then said to Newcomer, "Hurry up! Give me the money, whatever you've got." Newcomer went back to where McGee was stacking the money and told her to put whatever she had gathered in the bank bag. The ladies approached the vault gate with the bank bag and Newcomer handed Jackson the bag. Jackson then ran out of the bank's front door. Newcomer and Thames went to the bank's front doors and watched Jackson run across Glenda and Julia Streets. A bank employee called 911 and Thames gave the police a description of Jackson and the route he had followed when he left the bank. Within approximately 15 minutes, Jackson was apprehended by Richland Parish Sheriff's Deputy Frank Jones; at the time he was taken into custody, Jackson had the bank bag filled with money and he was unarmed.
Approximately 24 hours after the robbery, Charlie Reynolds, the maintenance man for the bank, was cutting grass and found a toy gun on the ground in the direction that Jackson ran. Reynolds gave the gun to Thames, who turned the gun over to Officer Terry Thompson. The toy gun was admitted into evidence and Thames testified that the handle of the gun resembled what he saw when Jackson opened his jacket.
After being taking into custody, Jackson was advised of his rights and he gave two statements. In his oral statement, Jackson said that his name was Reginald Burks and he admitted committing the robbery. Jackson later gave a recorded statement to Officer Terry Thompson where he admitted giving the note to McGee and taking the money. In the statement he denied having a gun, stating that he opened his jacket for intimidation purposes. Additionally, in the second statement Jackson was questioned about prior arrests. The defense filed a motion to suppress the statements alleging they were coerced and involuntary. After a hearing on the motion where several police officers testified that Jackson was never threatened, intimidated, or promised anything, the trial court held the statements admissible.
Also admitted was the video tape from the security camera. During the testimony of McGee, Thames, and Newcomer, the video was played for the jury. The witnesses testified to the specific events as the video was played and they all made in court identifications of Jackson.
Jackson was charged by bill of information with first degree robbery, a violation of La. R.S. 14:64.1. A jury convicted Jackson as charged and he was sentenced to serve 15 years at hard labor without benefit of probation, parole or suspension of sentence. Jackson's motion to reconsider sentence was denied by the trial court. He appeals his conviction and sentence.

Law and Analysis: Sufficiency of the Evidence
In his first assignment of error, Jackson claims that the evidence was not sufficient to prove that the victims had a reasonable basis to believe that he was armed with a dangerous weapon when he gave her the note demanding money, one of the elements of first degree robbery as defined in La. R.S. 14:64.1.
When issues are raised on appeal concerning the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The sufficiency issue is reviewed first because the accused may be entitled to an acquittal *771 under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992).
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, supra.
"First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La. R.S. 14:64.1. The victim's subjective belief that the perpetrator was armed with a dangerous weapon, if objectively reasonable given the factual circumstances, is sufficient to support a conviction for first degree robbery. State v. Jones, 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/01/99), 748 So.2d 434; State v. Cook, 98-848 (La.App. 5th Cir.1/26/99), 729 So.2d 634, writ denied, 99-0570 (La.6/25/99), 745 So.2d 1185.
Jackson entered the First Republic Bank in Rayville and presented McGee a note stating he was armed and threatening to harm her and others with a gun and gasoline. McGee testified that she believed he was armed. Additionally, the security video was played for the jury while Thames, McGee, and Newcomer all testified in great deal about the series of events that took place, thereby allowing the jury to view Jackson's actions in intimidating the bank employees. Additionally, Thames testified that when he approached Jackson and asked him to move away from the vault, Jackson opened his coat and Thames saw a gun handle. In his statement, Jackson claimed that he did not have a gun; however, he also stated that he opened his jacket to intimidate. When he was apprehended some 15 minutes after the robbery, Jackson was not armed; however, the day after the robbery, a toy gun was found on Johnson's route from the bank.
In light of the victims' testimony and the robbery note, a rational juror could have concluded that it was reasonable under the circumstances for the victims to believe that Jackson was armed with a dangerous weapon during the robbery. Viewing the totality of the evidence presented in a light most favorable to the prosecution, a rational trier of fact could find every element of the elements of the offense of first degree robbery. The assignment is without merit.

*772 Failure to grant a mistrial

As a result of Jackson's motion to suppress his statements, the trial court made a pre-trial ruling that his statements were freely and voluntarily given and therefore admissible at trial. When the taped statement was played at trial, Deputy Thompson's question to Jackson regarding prior arrests and Jackson's response was heard by the jury. Defense counsel objected, the objection was sustained and the jury was removed from the courtroom. La. C.E. art. 404B. Defense counsel moved for a mistrial based on the reference to inadmissible other crimes. After hearing arguments, the trial court denied the motion and issued an admonition. In his second assignment of error, Jackson argues that the trial court erred in failing to grant him a mistrial pursuant to La.C.Cr.P. art. 770.
"Upon a motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or court official, during the trial or in argument, refers directly or indirectly to ... [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." La. C.Cr.P. art. 770. If the remark or comment falls outside the scope of article 770 and is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, the court is required to admonish the jury to disregard it. La.C.Cr.P. art. 771. If an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial. La.C.Cr.P. art. 771.
Although art. 770 is couched in mandatory terms, it is a "rule for trial procedure." Thus, the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis on appeal. State v. Ingram, 29,172 (La.App.2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, writ denied, 94-1379 (La.4/8/96), 671 So.2d 332. Trial error is harmless where the verdict rendered is "surely unattributable to the error." Id.
An error cannot be considered on appeal unless an objection was made at the time of its occurrence. La.C.Cr.P. art. 841. The contemporaneous objection rule also prevents defense counsel from "sitting on" an error and gambling on the verdict, which would allow counsel to appeal an error which might have been corrected at trial. State v. Arvie, 505 So.2d 44 (La. 1987); State v. Carter, 589 So.2d 1212 (La. App. 4th Cir.1991).
While the deputy's out-of-court questioning of Jackson invited inadmissible evidence, neither the statement made by Jackson nor its admission at trial required the granting of a mistrial. Additionally, in light of the overwhelming evidence offered against Jackson, a statement regarding a prior arrest which resulted in an acquittal, can hardly be viewed as prejudicing Jackson such to deny him a fair trial and as such any error is harmless. State v. Johnson, supra; State v. Wafer, 31,078 (La.App.2d Cir.9/23/98), 719 So.2d 156, writ denied, 99-1114 (La.10/1/99), 747 So.2d 1137; State v. Barnes, 28,835 (La. App.2d Cir.12/11/96), 685 So.2d 1148, writ denied, 97-0274 (La.10/10/97), 703 So.2d 602. Additionally, although a transcript of the tape recorded statement was admitted at the motion hearing and available for review by defense counsel, no mention of or objection to the prior arrests question was made until after the tape was played for the jury. "In fairness to the state, a defendant cannot simply watch the proceedings unfold and silently hope that the state will introduce inadmissible evidence or that the trial court will commit error." State v. Mart, 419 So.2d 1216 (La.1982). As such, under these particular factual circumstances, the trial court was within its discretion in denying the mistrial and admonishing the jury to disregard the inadmissible evidence. This assignment of error lacks merit.

*773 Excessive Sentence

Jackson also contends that his sentence is unconstitutionally excessive. By motion to reconsider sentence, he claims that the trial court failed to assign sufficient weight to mitigating factors as required by La. C.Cr.P. art. 894.1.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894 1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
The second prong of the test addresses whether the sentence imposed is too severe or excessive in light of the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
The sentencing judge reviewed a PSI which revealed that as a juvenile, Jackson was arrested for theft of less than $100. Additionally, Jackson has a 1995 conviction for two counts of unauthorized use of an access card for which he got two years at hard labor with two years of active supervised probation. Jackson was also arrested in 1996 for two counts of armed robbery and two counts of attempted armed robbery, failure to appear for issuing worthless checks and failure to appear for forgery. He was found not guilty on the armed robbery and attempted armed robbery charges but his probation was revoked.
The judge noted that Jackson had spent considerable amounts of time in foster care due to his mother's abuse of him and his siblings. As a result of Jackson's mother's schizophrenia, she was abusive and unable to care for her children. Both parents are now deceased. Jackson's last foster mother does continue to consider herself his mother. The sentencing judge placed much emphasis on Jackson's positive school history; Jackson was an honor student in elementary, finished high school with a 2.8 GPA, no suspension, and participated in football and track. Jackson received a track scholarship to Liberty University in Detroit but chose to enter the National Guard and attend NLU where he finished two and a half years, accumulating 93 hours. Immediately before the judge sentenced Jackson, Jackson made a statement where he admitted his culpability and showed remorse. The sentencing judge stated that the comments made him inclined to impose a lesser sentence, but noted that the crime was serious. The judge then sentenced Jackson to 15 years.
*774 Jackson faced a minimum sentence of three years and a maximum of 40, all to be served without the benefit of parole, probation or suspension of sentence. Though he does not have an extensive criminal history, he has had several prior arrests and one prior felony conviction, mostly involving theft and robbery. Additionally, Jackson threatened several people with great bodily harm with either a gun or gasoline explosion during a time that the bank had several employees and customers present. Thames testified that he hesitated calling the police until after Jackson left for fear of a hostage situation. In sum, based on the sentencing transcript, 15 years, which is at the lower end of the spectrum, is not excessive. These assignment of error have no merit.

Error Patent
The trial court informed Jackson that he had three years from the finality of his conviction and sentence to file for post-conviction relief. The correct prescriptive period applicable to his conviction and sentence is two years as opposed to the prior three-year period. La.C.Cr.P. art. 930.8.
The trial court is hereby directed to provide Jackson with written notice that the prescriptive period for applying for post-conviction relief is two years from the date his judgment of conviction and sentence becomes final. This notice should be sent to Jackson within ten days of the rendition of this opinion and the trial court clerk is directed to file proof of Jackson's receipt of the notice in the record of this proceeding. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).

Conclusion
For the reasons set forth above, Jackson's conviction and sentence are affirmed.
AFFIRMED.