WILLIAMS, J.
hThe defendant, James R. Banks, was charged by bill of information with distribution of marijuana, a violation of LSA-R.S. 40:966(A). Following a jury trial, the defendant was found guilty as charged. He was sentenced to serve 12 years in prison at hard labor with credit for time served. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On March 12, 2004, Deputy Sheriff Investigator Mike Gilmore, of the Franklin Parish Sheriffs Office (“FPSO”), received a telephone call from a confidential informant with regard to a man who had marijuana for sale. Deputy ' Gilmore had worked with the informant on several occasions and believed his information to be reliable. Therefore, the deputy instructed the informant to arrange a meeting between him and the seller at a local car dealership to complete a drug transaction.
Deputy Gilmore drove an unmarked private vehicle to the agreed upon location. The private vehicle was not equipped with a video or audio recording device. However, Deputy Gilmore obtained $60 to use for the transaction and photocopied the currency. Deputy Gilmore also arranged for two other deputies to be situated near the location of the transaction.
Deputy Gilmore and the other deputies went to the location, but only Deputy Gilmore was involved in the actual drug transaction. Deputy Gilmore observed a vehicle approaching. A man, who was later identified as the defendant, was riding as a passenger in the vehicle. The defendant exited the vehicle, and as the vehicle drove away, the defendant approached | ^Deputy Gilmore. Deputy Gilmore instructed the defendant to enter his vehicle. Deputy Gilmore did not know the defendant and had never met him before.
Deputy Gilmore drove the defendant to an area near the location where the other deputies were waiting. He then gave the defendant the $60, and the defendant handed him a plastic sandwich bag filled with four individually wrapped plastic bags containing small quantities of marijuana. Deputy Gilmore, who had planned to effect the defendant’s arrest on the highway, attempted to persuade the defendant to remain in the vehicle. However, the defendant refused and walked away. The other deputies approached at that time, and the defendant was placed under arrest. The buy money was still in the defendant’s possession at the time of his arrest. Deputy Mike Wilson transported the defendant to FPSO headquarters. There, Deputy Gilmore obtained the defendant’s driver’s license and recorded his address in a report. After Deputy Gilmore advised the defendant of his rights per Miranda, the defendant refused to make any statement with regard to the drug transaction. However, the defendant told Deputy Gilmore that he wanted to “help himself.” The defendant informed Deputy Gilmore that he knew someone who could sell the deputy a pound of marijuana. Deputy Gilmore agreed to pursue this tip. In doing so, he agreed to transport the defendant to a gas station in Winnsboro, so the defendant could call the person he had identified from a telephone line different from that of the sheriffs department.
Upon their arrival at the gas station, Deputy Gilmore retrieved a | ..¡recording device to install on the telephone the defendant would use to make the telephone call. As he was doing so, he asked the defendant for the telephone number he intended *648 to dial. When the deputy received no answer, he turned and saw the defendant running from the scene. Deputy Gilmore called out to the defendant to stop, but the defendant continued running and escaped. The following day, the deputies obtained a warrant for the defendant’s arrest and went to the address listed on the defendant’s driver’s license. The defendant was arrested without incident.
The defendant was charged by bill of information with distribution of marijuana, a violation of LSA-R.S. 40:966(A).[1] The defendant rejected a plea offer and was tried by jury. At the conclusion of the trial, the jury found the defendant guilty as charged. The trial court sentenced him to serve 12 years in prison at hard labor with credit for time served. The trial court denied the defendant’s motion to reconsider sentence, and this appeal followed.
DISCUSSION

Motion for Mistrial

The defendant contends the trial court erred in denying his motion for mistrial based upon a comment made by the prosecutor during his opening statement. During his opening statement, the prosecutor stated:
|4Peputy Gilmore took defendant Banks to the Texaco Station downtown in Winnsboro to make a phone call on a line other than a Sheriffs Office telephone. And when they got there, Deputy Gilmore set up recording equipment on the telephone to record the telephone call by the defendant Banks. As he was doing that, James Banks fled on foot and escaped. Banks was re-arrested the following day at his home in Winns-boro.
After the state completed its opening statement, defense counsel moved for a mistrial, arguing that the prosecutor’s reference to the defendant’s escape was a prohibited reference to another crime. The trial court denied the motion for a mistrial, stating:
Okay. The Court will allow you to refer to the — to the escape or his disappearance but not to the fact that he has pending charges for the escape.
[[Image here]]
Okay. I think you can refer to that as him fleeing because that is sometimes used to show a guilty knowledge or intent, so I will allow that but will not allow any referral to the pending charge of escape against him....
Subsequently, on direct examination, Deputy Gilmore testified that when he reached back to give the defendant the telephone, the defendant “had taken off running.” During cross-examination of Deputy Gilmore, defense counsel used the deputy’s testimony to make it clear to the jury that the defendant only left the scene after the deputy had arrested him for selling marijuana. After both sides rested their cases, the defendant made another motion for mistrial based upon the reference to the escape. The court denied the defendant’s motion for a mistrial, stating, *649 “[T]here was no testimony that he was charged with escape.”
The determination of whether to grant a mistrial rests within' the |ssound discretion of the trial judge, and a denial of a motion for mistrial will not be disturbed on appeal absent abuse of that discretion. State v. Mandosia, 36,827 (La.App. 2d Cir.4/9/03), 842 So.2d 1252; State v. Hopkins, 626 So.2d 820 (La.App. 2d Cir.1993). Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant has resulted from the prosecutor’s comments lies in the sound discretion of the trial judge. State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583; State v. Leonard, 2005-1382 (La.6/16/06), 932 So.2d 660.
LSA-C.Cr.P. art. 770(2) mandates a mistrial if the district attorney refers to “[ajnother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.... ” Although art. 770 is couched in mandatory terms, it is a “rule for trial procedure.” State v. Jackson, 33,837 (La.App. 2d Cir.9/27/00), 768 So.2d 767, writ denied, 2000-3078 (La.11/2/01), 800 So.2d 864; State v. Owens, 32,640 (La.App. 2d Cir.10/27/99), 763 So.2d 628, writ denied, 2000-0010 (La.6/15/00), 764 So.2d 963. Thus, the introduction of inadmissible “other crimes” evidence results in a trial error subject to harmless error analysis on appeal. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; State v. Jackson, supra; State v. Ingram, 29,172 (La.App. 2d Cir. 1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505. Trial error is harmless where the verdict rendered is “surely unattributable to the error.” Id.
In State v. Ingram, supra, the defendant was charged with aggravated rape. During his opening statement, the prosecutor referred to “ongoing” abuse. The defendant moved for mistrial, contending the prosecutor’s | (¡statement amounted to a reference to other crimes. The trial court denied the motion for mistrial, and this court affirmed the ruling, stating:
[E]ven if it were a reference to other crimes, the statement was harmless error because the jury’s verdict was surely unattributable to that statement. ■ The prosecutor’s ambiguous statement was apparently not repeated when his opening statement resumed. Likewise* the foundation' of the state’s case was not this obscure portion of its opening statement, but the testimony of [the. victims].
We accord credit to the good sense and fair-mindedness of the jurors who heard the evidence. There is no showing that the prosecutor’s comments made it impossible for the defendant to obtain a fair trial and trial judge was not clearly wrong in this determination.
Id. at 666 (internal citations omitted).
In the instant case, while the prosecutor’s statement directly referred to another crime, ie., escape, the defendant has not shown that the jury’s verdict was attributable to that statement. The jury was presented with undisputed evidence that the defendant gave Deputy Gilmore four small bags containing marijuana in exchange for $60; he was arrested with the $60 in his possession; Deputy Gilmore had photocopied the currency prior to the drug exchange; the currency in the defendant’s possession at the time of the arrest bore the same serial numbers as the currency Deputy Gilmore had photocopied. Moreover, there is no showing that the prosecutor’s comments made it impossible for the defendant to obtain a fair trial. In light of the overwhelming evidence offered against the defendant, the prosecutor’s statement with regard to the defendant’s escape following his arrest cannot be *650 viewed as prejudicing the defendant such as to deny him a fair trial. As such, the error was harmless, and the trial court did not abuse |7its discretion in denying the motion for mistrial. This assignment is without merit.

Excessive Sentence

The defendant also contends his sentence of 12 years in prison at hard labor is excessive. According to the defendant, the sentence imposed “is grossly disproportionate to the severity of the crime and serves no useful purpose.”
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, 2004-0834 (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of Loffense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
In the instant case, the court ordered a pre-sentence investigation (“PSI”) of the defendant. The PSI revealed that the defendant had an adult criminal record. In the early 1980’s, the defendant had two convictions for driving while intoxicated. His PSI also reflected an arrest in 1985 for burglary and an arrest in 1990 for driving while intoxicated with no disposition of the charges. The defendant’s most serious offenses were a 1991 conviction for aggravated robbery in Texas and another 1991 laconviction in Texas for burglary. The Texas court sentenced the defendant to serve a 10-year hard labor sentence for the aggravated robbery and a 6-year hard labor sentence for the burglary, to run concurrently. In January 2004, the defendant was charged in Louisiana with aggravated battery with a dangerous weapon *651 but pled guilty to simple battery -with an object; the defendant failed to appear for sentencing with regard to that charge. In August 2004, the defendant was charged with simple theft. Moreover, in addition to the instant offense, he has also been charged with simple escape as a result of his escape on the day of his arrest in this matter.
The defendant’s social history indicated that he was reared by his aunt, who is now deceased, as is his father. The defendant indicated that he had not seen his mother since 2001. He earned a GED and has had training in carpentry and cooking; he worked for approximately two years in Texas. After his release from prison in Texas in 2001, the defendant moved to Louisiana and started a landscaping company. The defendant maintained that he was innocent of this crime.
LSA-R.S. 40:966 provides, in part:
B. Penalties for violation of Subsection A. Any person who violates Subsection A with respect to:
* * *
(3) A substance classified in Schedule I which is marijuana, tetrahydrocannabi-nols, or chemical derivatives of tetrahy-drocannabinols, shall upon conviction be sentenced to a term of imprisonment at hard labor for not less than five nor more than thirty years, and pay a fine of not more than fifty thousand dollars.
In this case, the prosecutor did not file a habitual offender bill, so the |indefendant faced a hard labor sentence of between 5 and 30 years. His 12-year sentence is less than half of the statutory maximum.
At the defendant’s sentencing hearing, the trial court reviewed the facts of the instant offense, the defendant’s criminal record and social history. Defense counsel reminded the court that the defendant had a low IQ, and the defendant declined to address the court. The trial court concluded that the nature of the defendant’s criminal history and apparent intention to continue criminal activity warranted a 12-year hard labor sentence.
After reviewing the record, we conclude that the trial court gave sufficient consideration to the factors set forth in LSA-C.Cr.P. art. 894.1. This sentence is neither shocking nor grossly disproportionate to the seriousness of the offense, given this offender’s criminal history. This assignment is without merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.

. The defendant pled not guilty on June 22, 2004. When the case was called in September 2004, the defendant failed to appear, and a warrant was issued for his arrest. The defendant next appeared in court on February 7, 2006, when his attorney filed a motion for a sanity commission. That motion was granted, and the defendant was examined. A sanity hearing was held on May 2, 2006, and the court found that the defendant was competent to stand trial. The materials submitted in conjunction with that hearing are not included in this record, but according to statements made by defense counsel, the defendant was found to have an IQ "between 60 and 70.”