691 So.2d 1365 (1997)
STATE of Louisiana
v.
Decar LOFTON.
No. 96 KA 1429.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
*1367 George H. Ware, Jr., St. Francisville, for Plaintiff/Appellee State of Louisiana.
Clayton M. Perkins, Jr., St. Francisville, for Defendant/Appellant Decar Lofton.
Before CARTER, LeBLANC and PARRO, JJ.
LeBLANC, Judge.
The defendant, Decar Lofton, was charged by grand jury indictment with armed robbery, a violation of La. R.S. 14:64. The defendant pled not guilty and, after trial by jury, was found guilty as charged. He was sentenced to fifty years imprisonment at hard labor with credit for time served.[1] The defendant has appealed, urging two assignments of error.

FACTS:
At approximately 8:45 p.m. on October 25, 1995, Robert M. Simmons was at the Mississippi River ferry landing in West Feliciana Parish waiting for the ferry. When Simmons approached the road to get on the ferry, he saw that only one car was in line and the ferry was on the New Roads side of the river. Simmons turned his Chevrolet Blazer around and proceeded to the area where the trash dumpster was located. Simmons stopped at the dumpster, got out of his truck, leaving the engine running, and began cleaning out his vehicle. There was lighting at the ferry landing, the moon was out, and the light inside Simmons' truck was on.
According to Simmons, a man, who was later identified as the defendant, approached him with a gun in his hand and said, "[G]ive me your f* * * * * * money." When Simmons told him he did not have any money, the defendant told him to give him his wallet. Simmons handed his wallet to the defendant. According to Simmons, the defendant then told him to get on his knees and the defendant put the gun barrel to Simmons' head. Simmons was scared the defendant was going to shoot him, so he ran toward the town of St. Francisville. While Simmons was running, the defendant shot at him several times. Simmons heard the bullets ricocheting off of the road behind him. Simmons then heard the tires of his truck "peeling" in the gravel and saw his truck coming toward him. Simmons jumped off the side of the road down a drop-off to avoid being hit. The truck ran off of the road a little but then returned to the road. Subsequently, a black male in a red car stopped and told Simmons to get in and he would take him to the police. Simmons did not get in the car; he was unsure of who the man was and was suspicious as to whether or not he was with the defendant. The man driving the red car left the area and stated that he was going to get the police. Simmons subsequently obtained a ride to the police station with another man.
Simmons identified Edward Hilliard as the person who drove up in the red car. Simmons' truck was recovered, but his shotgun and binoculars were missing from the vehicle. The day after the incident, Simmons identified the defendant from a photographic lineup as being the person who robbed him. The defendant subsequently was arrested.
The defendant gave a statement to Deputy Glenn Daniel of the West Feliciana Parish Sheriff's Department regarding the instant incident. In the voluntary statement, the defendant admitted robbing Simmons but claimed that he was not in his "right mind" when the incident occurred because he had been drinking and smoking marijuana. The defendant also claimed that Hilliard talked him into robbing Simmons. He claimed that, *1368 after he had taken Simmons' wallet, he told Simmons to run to the bushes; but Simmons ran down the road and yelled for help, so the defendant shot the gun twice into the air. He claimed that he did not shoot at the victim.
Hilliard testified at trial that, on the evening of October 25, he and the defendant parked near a rock pile at the ferry landing where they smoked marijuana and drank gin. Hilliard did not see the defendant rob anyone but heard four or five gunshots after the defendant walked to the other side of the rock pile with a gun. Hilliard claimed that, when the defendant walked around the rock pile with the gun, he thought that the defendant was going to kill himself. Hilliard left after he heard the gunshots. Hilliard, who was driving a red car, saw the victim running toward town. The victim told Hilliard that he had been robbed, so Hilliard attempted to procure the police. Hilliard did not see the defendant again until after he had given the police a statement regarding the incident. Hilliard admitted that he did not mention the defendant in an initial statement that he gave the police because he did not want the defendant to get into trouble. Hilliard also gave a second statement to the police, wherein he admitted being at the ferry landing, hearing gunshots, and seeing the victim run down the road. However, he again failed to mention the defendant in the second statement.
In a third statement that Hilliard gave to the police, he admitted being with the defendant at the ferry landing. In that statement, he said that the defendant got out of Hilliard's car with a gun, walked around the rock pile, and then Hilliard heard four gunshots. Hilliard saw the victim running, and Hilliard went to the police station. Hilliard saw the defendant later that night. Hilliard stated that the defendant was at his house on the night when the police found the victim's shotgun in the field. Hilliard claimed that he asked the defendant what he was going to do with the shotgun, and the defendant told him that he was going to sell it. At trial, Hilliard admitted that he held back details regarding the defendant, but it was because the defendant was like a brother to him. Hilliard denied robbing Simmons and claimed that he did not see the defendant rob anyone. He admitted that the first two statements were wrong and the third statement was a more complete one.

ASSIGNMENT OF ERROR NUMBER ONE:
In his first assignment of error, the defendant contends that the state failed to prove the case beyond a reasonable doubt and the trial court erred in denying his motion for post verdict judgment of acquittal.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity beyond a reasonable doubt. See La.Code Crim. P. art. 821; State v. King, 563 So.2d 449, 456 (La. App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990); State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). Where the key issue raised by the defense is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984).
This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
La. R.S. 14:64(A) defines armed robbery as: *1369 the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In the instant case, the victim positively identified the defendant in a photographic lineup and in court as being the person that pointed a gun at him, demanded his money, and took his wallet and truck. Hilliard admitted that he and the defendant were at the area where the robbery occurred and that the defendant left his car with a gun and Hilliard subsequently heard gunshots. Additionally, the defendant gave a voluntary statement to the police, wherein he admitted pointing a gun at the victim and taking the victim's wallet. He also admitting shooting into the air and driving off in the victim's truck.
The guilty verdict returned in this case indicates that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the state witnesses. This court will not assess the credibility of the witnesses or reweigh the evidence.
After reviewing the record, we are convinced that the evidence supports the jury's determination. A rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt the elements of armed robbery and negated any reasonable probability of misidentification. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO:
In his second assignment of error, the defendant contends that his sentence was excessive as the term of fifty years was too harsh for a first felony offender. In his brief to this court, the defendant argues that the court failed to give sufficient reasons for the sentence and that the sentence was constitutionally excessive.
The defendant was sentenced on April 4, 1996. He subsequently filed a timely written motion for reconsideration of sentence, which was denied by the trial court.
The penalty for a person convicted of armed robbery is imprisonment at hard labor for not less than five nor more than ninetynine years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64(B). Thus, the defendant's sentence of fifty years at hard labor was within the statutory requirements.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within the statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
La.Code Crim. P. art. 894.1 sets forth guidelines which should be considered by the trial court before imposing sentence. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. Code Crim. P. art. 894.1(C). The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990).
In sentencing the defendant, the trial court stated that, not only did the defendant put the gun to the victim's head as a threat, but the defendant also discharged the gun at least twice when the victim fled. The court felt that the defendant committed an "extremely serious" offense. The court stated that a lesser sentence would deprecate the seriousness of the offense. The court further noted that a probated sentence was not possible for an armed robbery conviction.
*1370 After reviewing the record, we are unable to find that the trial court abused its discretion in sentencing the defendant. The sentence imposed is not grossly disproportionate to the severity of the crime, in light of the harm to society, or so disproportionate as to shock our sense of justice. According to testimony, not only did the defendant threaten the victim by putting a gun to his head when he robbed him, but when the victim fled the defendant discharged the gun. The defendant also chased after the victim in the victim's truck. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Under the authority of La.Code Crim. P. art. 920(2), this court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error. The trial court failed to sentence the defendant without benefit of parole for his conviction of armed robbery as required by La. R.S. 14:64(B). Although the trial court erred by imposing an illegally lenient sentence, this court will not correct the sentence as the error is in the defendant's favor and the state has not appealed the illegal sentence. See State v. Fraser, 484 So.2d 122 (La.1986).