840 So.2d 7 (2003)
STATE of Louisiana, Appellee,
v.
Kevin Lamont JONES, Appellant.
No. 36,553-KA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
Rehearing Denied February 27, 2003.
*8 Hersy Jones, Jr., Shreveport, for Appellant.
*9 Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler, Donna Hall, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and HARRISON (Pro Tempore), JJ.
HARRISON, Judge Pro Tempore.
Kevin Lamont Jones was charged by amended bill of information with armed robbery while using a firearm, La. R.S. 14:64, 64.3. He proceeded to trial, after which a 12-member jury found him guilty as charged. The District Court sentenced him to 10 years at hard labor, without benefit of parole, probation or suspension of sentence for the armed robbery, and a consecutive term of five years at hard labor without benefits for the use of a firearm in the offense. Jones now appeals, urging seven assignments of error. We affirm.

Factual background
The victim, 70-year-old George Houston, was an employee of the Shreveport Times. About 3:00 a.m. on July 12, 1999, he was delivering papers to coin boxes outside a convenience store on North Market Street in Shreveport. He stopped his van close to the coin box and left the engine running while he carried the papers to the box. As he was doing this, a man (later identified as Myron Epps) came around the corner of the store. Brandishing a .40 cal. pistol, Epps told Houston, "Give it up, b*tch," and struck him in the head with the weapon several times. Houston's glasses flew to the ground but he remained on his feet. According to Houston, the two men struggled for a few minutes, as Houston tried to turn the gun on his assailant.
Houston testified that during the scuffle, another man, who had come "off the highway," came up, hit him and knocked him to the ground. This man, wearing a green sweatshirt with a hood over his head, told Houston, "G*d d*mn it, don't get up." At this point, Houston heard Epps tell the hooded man, "Let's go, Kevin." Epps and the hooded man got into the van, with Epps behind the wheel. Houston tried to come to his feet, but the hooded man shouted at him, "G*d d*mn it, I told you not to get up." The two drove off. The van, engulfed in flames, was found by Caddo Parish deputies in Blanchard a few minutes later. Houston's briefcase and .38 cal. police special revolver were missing from the vehicle.
Houston got a good look at Epps and his pistol. Houston did not know Epps; because the second assailant had a hood over his head, Houston could not recognize him. He reported the offense, and about 4:00 a.m. Shreveport police located Epps and another man walking in the parking lot of an apartment complex on North Market Street; the other man was in a green sweatshirt and blue jeans. Police detained Epps, who was carrying a concealed .40 cal. semi-automatic handgun. The man in the hooded sweatshirt fled, but Epps told them he was Kevin Jones. It turned out that Jones was Houston's wife's cousin's grandson. The police went to Jones's apartment; he was not home, but officers told his father that they wanted Jones for questioning.
Around mid-morning Jones and his father went voluntarily to the police station to be interviewed by Detectives Donna Lott and Ben Dailey, who tape recorded the interview. The tape begins with Det. Lott advising Jones that he was not under arrest but reading him his rights from a Miranda card which she initialed and dated[1] and Jones signed. She further advised *10 him that he did not have to give up those rights, and could refuse to speak. He proceeded to give a statement.
Jones initially denied being involved in the robbery, saying that he was with his girlfriend, Cassandra, all night. However, he was unable to give her last name, apartment or phone number, and he agreed to ride with the detectives to her apartment. When Cassandra's sister did not verify the alibi, the detectives placed Jones under arrest for armed robbery and Det. Dailey advised him of his Miranda rights, from memory, in the parking lot.
Jones then resumed his statement, admitting he was present when the crime occurred, but insisting that he only happened onto the scene, tried to stop Epps from hitting Houston, and actually pulled the two apart. He admitted he left in the van with Epps, but fled at the first opportunity and went to Cassandra's apartment. He said that Epps offered him Houston's revolver, and he refused. He admitted that he and Epps hid the gun, and were together when Epps was arrested. He stated he ran because he had a pending trespassing charge at those apartments. He also led the detectives to the hidden revolver.
Epps and Jones were initially charged in the same bill of information with armed robbery and carjacking; the defendants were later severed for trial purposes. At a preliminary examination in August 1999, Det. Lott testified that Jones had given a statement implicating himself in the crime, but did not mention the tape recording. In discovery responses, the State did not provide notice of a taped statement. Jones filed a motion to suppress his July 12, 1999 statements, urging a Miranda violation and that the statements were not free and voluntary. The District Court granted the motion to suppress, but on application for supervisory review this court vacated that judgment and remanded the case.
By supplemental discovery, the State provided notice of Jones's taped statement. On May 31 and June 19, 2001, the District Court held a free and voluntary hearing in which the State adduced evidence as to the Miranda warnings and the taped statement. The court ruled that the taped confession was free and voluntary.
At trial in November 2001, Houston related that two assailants, one of them armed, had struck him and stolen his van. Det. Lott described the circumstances of Jones's statement and played the tape for the jury.
Jones testified that he walked up to find Epps and Houston fighting. Seeing that Epps was about to shoot the elderly man, Jones broke up the fight but Houston lunged back at Epps and the two went at it again. Jones begged Houston to stop, but every time he pulled them apart, the old man ran back into the fight. While Houston may have fallen, Jones never hit him. Finally, Epps pointed the pistol at Jones and said, "Come on, let's go." Jones got into the van with Epps because of the weapon and to defuse the situation; a few blocks away, he told Epps to let him out. He added that Epps came back and tried to give him Houston's revolver, but he refused it and Epps hid it at another apartment complex. Jones admitted making the taped statement and telling police where the stolen gun was hidden.
On rebuttal, the State introduced a bill of information charging Jones with trespassing on the apartment complex. The State argued this was to rebut the testimony of Jones's father (not designated as part of the appellate record) who, according to the State, related that an Officer Evans handcuffed Kevin Jones, took him to the station and arrested him on the *11 criminal trespass charge. The State contended that the bill of information refuted that testimony. The court admitted the document, over Jones's objection.
As noted, the jury found Jones guilty as charged of armed robbery, and further found that the dangerous weapon used was a firearm. Jones filed a motion for post verdict judgment of acquittal or new trial, which was denied. The court sentenced him to 10 years at hard labor without benefits for the armed robbery, plus a consecutive five years at hard labor without benefits for the use of a firearm, pursuant to R.S. 14:64.3. This appeal followed.

Discussion: Sufficiency of the evidence
By his first two assignments of error, Jones urges the District Court erred in submitting the charge of armed robbery to the jury and in denying the motion for post verdict judgment of acquittal or new trial. By his fifth assignment, which is argued with the first two, Jones urges the District Court erred in refusing to submit a jury charge of carjacking. The thrust of these arguments is that the van and its contents were not "in the immediate control" of the victim; lacking this essential element, the crime could not have been armed robbery, R.S. 14:64. Instead, he urges the evidence supports only a charge of carjacking, which is defined as the taking of a motor vehicle belonging to another person, "in the presence of that person." R.S. 14:64.2. He further argues that the evidence is not sufficient to prove that he actually participated with Epps in beating the victim and taking the van. Jones contends there was no evidence to refute his claim that he walked into an ongoing crime, tried to assist the victim, and fled in the van only because Epps threatened him at gunpoint.
The standard of appellate review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard applies both to direct and circumstantial evidence. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64; State v. Taylor, 422 So.2d 109 (La.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983). A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3). If property is taken from the victim's presence by intimidation with a weapon, it is sufficient to sustain a conviction for armed robbery. State v. Refuge, 300 So.2d 489 (La.1974); State v. Long, 36,167 (La.App. 2 Cir. 10/30/02), 830 So.2d 552. To prove robbery, the State must show that the property was sufficiently under the victim's control that, absent violence or intimidation, the victim could have prevented the taking. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Long, supra. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
The reviewing court must defer to the trier of fact's rational credibility calls, evidence weighing and inference drawing. *12 State v. Mussall, 523 So.2d 1305 (La.1988). It is not the function of the appellate court to assess credibility or re-weigh evidence. State v. Marcantel, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Jackson, 33,837 (La.App. 2 Cir. 9/27/00), 768 So.2d 767, writ denied, 00-3078 (La.11/2/01), 800 So.2d 864.
At trial, the direct testimony of George Houston established that Jones participated with Epps in taking the van and its contents from Houston, while Epps was armed with a dangerous weapon, a .40 cal. semi-automatic pistol. Viewed in the light most favorable to the State, Jones's contention that the van and its content were not under Houston's immediate control lacks merit. Houston had stepped only a few feet away from the van when Epps, armed with a handgun, attacked him. In these circumstances, a motor vehicle may be the object of an armed robbery even though the victim was not literally occupying it at the time. State v. Lofton, 96-1429 (La.App. Cir. 3/27/97), 691 So.2d 1365, writ denied, 97-1124 (La.10/17/94), 701 So.2d 1331; State v. Peters, 553 So.2d 1026 (La.App. 4 Cir.1989). In short, this evidence is sufficient to prove the essential element of immediate control. Moreover, Houston graphically described being struck several times by Epps, and once by Jones so hard that it knocked him off his feet. This is sufficient to prove the essential element of force or intimidation.
In brief, Jones concedes that the jury was free to reject his "good Samaritan" defense. However, he submits there was no evidence that he intended to participate in Epps's criminal enterprise or knew of Epps's intent to rob Houston. Jones therefore contends that the jury had no rational basis, under Jackson v. Virginia, supra, to convict him.
Jones testified that he tried, several times, to pull Epps and Houston apart. Houston testified that after Epps was unable to subdue him, Jones came up and landed a heavy blow, knocking him off his feet and enabling the assailants to drive off in the van. On this record, the jury was free to accept Houston's version of the incident over Jones's. State v. Jackson, supra. Although Jones denied any intent to participate, Houston noted that Jones "helped his buddy rob me." Viewed in the light most favorable to the State, this evidence is sufficient to prove, beyond a reasonable doubt, that Jones participated in the armed robbery.
Finally, Jones submits (without elaboration) that since the evidence proves only a carjacking, the District Court erred in refusing to charge the jury as to that offense. For the reasons already discussed, the evidence was sufficient to prove the charged offense, armed robbery. We therefore decline to consider whether a jury charge as to any other offense was necessary.[2] These assignments of error do not present reversible error.

Improper closing argument
By his third assignment of error, Jones urges the District Court erred in overruling his objection that the State, in its closing argument, made arguments not based on the facts in the record. He cites the prosecutor's statement that the van *13 and its contents were within Houston's immediate control when they were taken. He contends that no such evidence was admitted.
The State responds that it was arguing a permissible alternative view of the evidence, including the testimony of Jones, for the jury to consider.
Argument shall be confined "to evidence admitted, to the lack or evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La.C.Cr.P. art. 774; State v. Eaton, 524 So.2d 1194 (La. 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). Improper or allegedly prejudicial argument requires reversal when it is probable that the jury's verdict was influenced by the remarks. State v. Deboue, 552 So.2d 355 (La.1989).
We have closely reviewed the contested portion of the State's argument in light of the evidence adduced at trial. Houston had taken a few steps from the van, leaving it unattended for the few moments it took to place newspapers in the box. On this evidence, the State was entitled to argue that the vehicle was in his immediate control, since absent the armed violence or intimidation by Epps, Houston could have prevented the taking. State v. Thomas, supra. As noted, a motor vehicle may be the object of an armed robbery even though the victim was not literally occupying it at the time of the taking. State v. Lofton, supra; State v. Peters, supra.
We also note that the District Court instructed the jury that the statements of counsel are not to be considered as evidence:
The lawyers have argued their interpretation of the law, the facts they think they have proven from the evidence and from inferences based on the evidence, and their conclusions from their interpretation of the law and the facts. These opposing view points are presented to you in arguments by the lawyers to assist you in your deliberations. However, the statements of the lawyers must be separated by you from evidence admitted in the case. R.pp. 130-131.
In view of the evidence admitted, the applicable law, and the court's admonition to place arguments in the proper perspective, this assignment does not present reversible error.

Admissibility of statement
By his fourth and seventh assignments of error, Jones urges the District Court erred in admitting his statement of July 12, 1999. He contends the State offered no proof that he was advised of his Miranda rights and waived them, or that his statement was otherwise free and voluntary. He argues that the detectives led him to believe he would not be charged with robbery if he would tell them what Epps did to the victim. By supplemental memo, Jones also urges (for the first time) that his statement was tainted because detectives lacked probable cause to arrest him on July 12, and any confession obtained as the result of an illegal "seizure" must be suppressed. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
The State responds that both detectives testified to giving Jones his Miranda rights, and he also signed a rights card. Moreover, even though the detectives may have initially told Jones that he apparently did not play a large part in the offense, this did not make his statement any less free or voluntary. Finally, the State urges that the argument based on Dunaway is untimely since Jones did not file a motion to suppress on those grounds or argue them to the District Court.
*14 When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. La. C.Cr.P. art. 218.1; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Roddy, 33,112 (La.App. 2 Cir. 4/7/00), 756 So.2d 1272, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288. Before a confession can be introduced into evidence, the State must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; C.Cr.P. art. 703 D; State v. Roddy, supra. The State's burden of proof is beyond a reasonable doubt. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, supra.
The District Court's findings as to the free and voluntary nature of a confession are entitled to great weight and will not be disturbed unless unsupported by the evidence. State v. Johnson, 479 So.2d 344 (La.1985); State v. English, 582 So.2d 1358 (La.App. 2 Cir.), writ denied, 584 So.2d 1172 (La.1991). Because of its superior position to observe the witnesses and assess their credibility, the District Court's ruling on a motion to suppress is entitled to great weight. State v. Horton, 01-2529 (La.6/21/02), 820 So.2d 556.
Jones's first contention is that the State failed to prove that he received his Miranda rights and waived them. The audio tape begins with Det. Lott reading Miranda rights to Jones, who signed a rights card, both of which were introduced in evidence at the free and voluntary hearing. Jones clearly stated that he understood his rights, and wished to waive them. The tape was paused when the detectives drove Jones to Cassandra's apartment; Det. Dailey testified that when she did not verify Jones's alibi, he placed Jones under arrest and gave him his Miranda rights. This was not recorded, but when the tape resumed, Jones confirmed that he had just received his Miranda rights again. On this evidence, the contention that Jones did not receive his Miranda rights is completely without merit.
Jones's second contention is that he was misled into giving his statement. He argues the detectives told him he would not be charged with armed robbery if he merely told them what Epps did; in fact, as paraphrased by defense counsel at trial, detectives assured him, "we have already determined that you did not have much part in it." When the tape was played, however, Det. Lott did not agree that Det. Dailey actually made this statement. R.p. 420. Our review of the tape indicates that Det. Dailey actually said, "Kevin, if you're not the one who did all this and we've already determined that you didn't have much part in it, if you saw [Epps] get the money out of the bag, it's not going to hurt you any further." The District Court did not find that this made the statement not free or voluntary. No detective ever told Jones he would not be charged with armed robbery; he specifically denied any threats, promises or inducements. In short, we find no abuse of the court's discretion.
Finally, Jones argues the statements were tainted because he was arrested without probable cause. The State correctly shows that Jones did not urge this in his motion to suppress. Failure to file a motion to suppress evidence prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress. La. C.Cr.P. art. 703 F; State v. Johnson, 595 *15 So.2d 789 (La.App. 2 Cir.1992). Even if the issue were properly presented, we would note that the District Court found probable cause at the preliminary exam on August 13, 1999; Jones has not shown that this was in error.
These assignments of error lack merit.

Evidence of prior conviction
By his sixth assignment of error, Jones urges that District Court erred in allowing the State to introduce into evidence of his prior conviction for trespassing. He contends, without elaboration, that the bill of information was hearsay and highly prejudicial to his case.
Jones objected to this document as improper rebuttal evidence, hearsay and irrelevant. He did not urge that it was inadmissible other crimes evidence. For this reason, the argument is not properly preserved for appellate review. La. C.Cr.P. art. 841 A; State v. Jetton, 32,893 (La.App. 2 Cir. 4/5/00), 756 So.2d 1206, writ denied, 00-1568 (La.3/16/01), 787 So.2d 299. On the issues properly presented, the record supports the District Court's ruling that the bill of information was to refute Jones's father's account of the arrest, and thus was proper rebuttal evidence. State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756. Although the bill of information was hearsay, it was admissible as a record or report setting forth factual findings resulting from an investigation made pursuant to authority granted by law, La. C.E. art. 803(8)(a)(iii). It was also properly self-authenticating. State v. Donald, 99-3612 (La.12/8/00), 775 So.2d 1054. This assignment lacks merit.

Conclusion
For the reasons expressed, Kevin Lamont Jones's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, DREW, and HARRISON, JJ.
Rehearing denied.
NOTES
[1] The card was dated "7-11-99" by mistake. The actual date was July 12.
[2] The court is required to charge the jury as to the law applicable to the case, providing the responsive verdicts. La. C.Cr.P. arts. 802(1), 809. Carjacking is not responsive to armed robbery. La.C.Cr.P. art. 814 A(22). On this record, a jury charge as to carjacking would not appear to be warranted.