STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-85

STATE OF LOUISIANA

VERSUS

RENALDO GERARD SWEET

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 94,410
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**Michael Harson**
**District Attorney, 15th JDC**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Plaintiff/Appellee**
      **State of Louisiana**

**David Michael Smith**
**Asst. District Attorney**
**P. O. Box 3602**
**Lafayette, LA 70502**
**(337) 237-7955**
**Counsel for Plaintiff/Appellee**
      **State of Louisiana**
**D. Warren Ashy**

**P. O. Box 2515**
**Lafayette, LA 70502-2515**
**(337) 237-0000**
**Counsel for Defendant/Appellant**
**Renaldo Gerard Sweet**

**Renaldo Gerard Sweet**
**LaSalle Correctional Facility**
**15976 Hwy. 165-Dorm E**
**Olla, LA 71465-4801**
**In Proper Person:**
**Renaldo Gerard Sweet**

GREMILLION, Judge.

In this case, the defendant, Renaldo Gerard Sweet, was convicted of the crime of armed robbery, in violation of La.R.S. 14:64, and was sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served. Defendant now appeals his conviction and sentence. For the following reasons, we affirm.

## WEIGHT AND SUFFICIENCY OF EVIDENCE

Defendant contends that the verdict is contrary to the law because the evidence was insufficient to convict him of armed robbery. He also claims that the trial court erred by giving improper weight to his alibi witnesses' testimony and the identification by the victim.

> In considering questions of sufficiency of the evidence, a reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. *State v. Marcantel*, 00-1629 (La.4/3/02), 815 So.2d 50.

*State v. Chesson*, 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 172, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686.

Defendant was convicted of armed robbery in violation of La.R.S. 14:64. Louisiana Revised Statute 14:64 provides: "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Thus, the State had to prove beyond a reasonable doubt that Defendant was armed with a dangerous weapon when he took the victim's car from the victim's

1

immediate control.

At trial, Randy Girouard testified that on February 10, 2002, he attended Mardi Gras festivities in St. Martinville and drank two half-pint bottles of Mad Dog/20-20. He later went home and "slept it off" before going out in Lafayette later that night. At about 10:45 p.m., he drove his car to the Mardi Gras festivities in Lafayette. Girouard testified that he was not intoxicated at the time. While looking for a parking spot, he saw a few guys he knew in the Hollywood Barber Shop parking lot. He testified that he noticed an unknown man, wearing a gray hooded sweatshirt, moving from one small crowd of people to another. He stated that he was flagged down by an acquaintance so he parked his car and left it running with the parking lights on. Girouard testified that he got out of his car and walked up to the group of about four guys. He said he greeted his friend, but soon realized that something was wrong. He said he looked back and saw the man in the hooded sweatshirt getting into his car. Girouard testified that he ran to his car and grabbed the driver's side door as the man was closing it. He said he was about four feet from him when Defendant pointed a gun in his face and told him to "back the f _ _ k up." Girouard stated that he moved in front of the car and asked anyone with a cellular phone to call the police. He testified that he could have stopped Defendant if he had not had the gun.

Girouard identified Defendant in open court. He said he got a good look at his hooded face while he was in his car. Girouard testified that he was clearly able to see the man's facial features again as he drove off, removed his hood, and looked back at him.

2

While Girouard was trying to borrow a cellular phone to report the robbery, a man from the crowd told him that the person who stole his car was Renaldo Sweet. The man told him that he had been talking to Sweet when Girouard was on Surrey Street, then Sweet walked over to the group of guys Girouard had stopped to talk with. The man also told him that Sweet had gone to Acadiana High School. The man did not want to give Girouard his name or get involved. Girouard testified that he did not try to find the man later nor did he ask his friends for his identity.

Girouard met with the police at his house and gave them a description of the robber. Girouard testified that he later looked in a 1997 Acadiana High School yearbook and found a picture of Renaldo Sweet. He identified the photograph as the same man who took his car. Girouard later identified Defendant in a photographic lineup presented to him by the Lafayette Police Department. Girouard said he immediately identified photograph number three as the man who robbed him.

On cross examination, Girouard stated that the Simcoe strip is very crowded during Mardi Gras and that there are several clubs in the area. He denied knowing that the area is the highest crime area in Lafayette. He testified that he left his car running because he did not think anyone would take it, he knew a few of the people in that parking lot, and he did not venture far from his car. Girouard admitted he was far enough away from his car for someone to get into it without him realizing it.

Regarding his identification of Defendant, Girouard stated that he saw him clearly from a few feet away, but he did not notice any identifying marks, tattoos, or scars on Defendant's face. However, Defendant has two tattoos on his neck, which

3

he had at the time of this incident. He has a blood red tattoo dripping "blood" in the middle of his throat and a tattoo reading "Raw" on the left side of his neck.

Lafayette Police Detective Brian Racca testified that when he interviewed him, Girouard had already developed Defendant as the suspect from information he acquired at the scene and from a high school yearbook. He testified that because the identity of the robber was supplied by Girouard, he did not obtain a detailed description. Eleven days later, Detective Racca showed Girouard a photographic lineup. He testified that he did not suggest to Girouard that the individual involved was pictured in the lineup. He stated that he only showed Girouard the one photographic lineup and did not show him any other lineups minus Defendant's photograph. Girouard positively identified Defendant as the robber.

Girouard's vehicle was later recovered in Vermilion Parish, where it had been stripped and burned. Defendant was arrested based on a warrant Detective Racca prepared for carjacking. He stated that the crime of carjacking was chosen based on the information Girouard supplied to the police. Detective Racca stated that after Defendant was arrested, he denied any involvement in the robbery.

Kendrick S. Boudreaux, a lifelong friend of Defendant, testified that he drove Defendant to Baton Rouge on Saturday, February 9, 2002, the day before the incident in question. He claimed that Defendant was going to visit his daughter and her mother, Nikki. Boudreaux said he could not remember Nikki's address or neighborhood, and explained that Defendant had given him directions over the phone. He testified that he dropped Defendant at Nikki's house late Saturday night and then drove to his girlfriend's house in Duson. Boudreaux stated he picked up Defendant

4

at Nikki's house in Baton Rouge late Monday night, February 11th, at approximately 1:00 a.m. He testified that Defendant did not return to Lafayette before Monday because Defendant called him from Nikki's house on Monday afternoon and because he had no other ride home.

Boudreaux also stated that he learned a few weeks after Defendant was arrested that someone had accused him of a crime. However, he stated that he did not talk to Defendant until a few days before trial, even though Defendant had been in jail about one year. Boudreaux explained that he had previously talked to Defendant's lawyer after he learned from Defendant's mother the date of the suspected crime. Boudreaux admitted he has a 1999 conviction of accessory to armed robbery, but stated that he has served his time and is not on probation or parole.

Diondra Laday, another long-time friend of Defendant, testified that she was living with Defendant's mother at the time of the incident because she was dating his brother. She stated that she had a phone conversation with Defendant at 11:30 p.m. on the night in question, February 10th. Laday testified that she remembered the date because it was one day before her birthday, February 11th. She said that she remembered asking Defendant what he was going to bring her from Baton Rouge for her birthday the next day. She stated that when Defendant called, the caller ID box attached to her phone showed Baton Rouge and displayed a number beginning with the area code 225. However, she could not remember the complete phone number.

On cross examination, Laday testified that she talked to Defendant's mother about a week after he was arrested and learned that she might be a witness in the case because she had talked to Defendant on February 10th. She stated that she

5

did not notify the police about this information, but instead told Defendant's mother, who then told his lawyer.

**Elements of Armed Robbery**

Defendant argues that the evidence at trial was insufficient to convict him of armed robbery. Without conceding that he was involved in the crime, Defendant contends that the evidence, when viewed in the light most favorable to the State, could have sustained a conviction for nothing more than the offense of carjacking. La.R.S. 14:64.2 states, in pertinent part:

> Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation.

Defendant argues that armed robbery requires a taking from the immediate control of another and that the facts establish that Girouard was not in control of his car while he was standing several feet away from it. He contends that if Girouard had the immediate control of his car, no one could have gotten into it without his knowledge. Defendant claims that the evidence supports only a charge of carjacking, as the robber had already taken control of Girouard's car and was in the process of driving off when he revealed the gun.

In *State v. Jones*, 36,553 (La.App. 2 Cir. 1/9/03), 840 So.2d 7, *writ denied*, 03-956 (La. 10/3/03), 855 So.2d 309, the second circuit resolved a similar issue. In *Jones*, the victim was delivering newspapers to coin operated boxes when he pulled up next to a box, left his engine running, and stepped a few feet away while carrying the papers to the box. An armed robber appeared and hit the victim in the head several times with a gun during a brief struggle. A second man appeared and

6

knocked the victim down. The two men then got into the van and drove away. The defendant argued that the victim's van was not in his immediate control as required by the armed robbery statute. The court found the evidence was sufficient to prove armed robbery even though the victim was not occupying his van at the time it was taken.

The Louisiana Supreme Court in *State v. Cooks*, 97-0999, p. 28 (La. 9/9/98), 720 So.2d 637, 652, *cert. denied*, 526 U.S. 1042, 119 S.Ct. 1342 (1999), has stated:

> This court has stated the immediate control requirement of the armed robbery statute is satisfied when property taken is within the presence of the owner. *State v. Refuge*, 300 So.2d 489 (La.1974). This court has further noted that armed robbery may occur where property taken is not in actual contact with the victim. *State v. Verret*, 174 La. 1059, 142 So. 688 (1932); *State v. Boelyn*, 432 So.2d 260, 261-262 (La.1983).

In the instant case, although Girouard testified at trial that he had walked away from his car, he also stated that once he realized his car was being taken, he returned to it, grabbed the open door, and tried to prevent Defendant from driving away. It was at this point that Defendant aimed the gun at Girouard. Given these facts, the trial court could have found that the State proved the elements of armed robbery beyond a reasonable doubt.

**Faulty Identification**

Defendant also argues that the trial court erred in relying on Girouard's tainted and inexact identification of him as the armed robber. He claims that Girouard had drunk two bottles of liquor that day, his name was suggested to Girouard, and that even though Girouard allegedly got a good look at him, he never saw any tattoos.

7

Defendant cites *State v. Ourso*, 502 So.2d 246 (La.App. 3 Cir.), *writ denied*, 505 So.2d 1138 (La.1987), for the holding that where the identity of the perpetrator is the key issue at trial, the state has the burden of negating all reasonable probability of misidentification. He claims that, in the instant case, there is a high probability of misidentification because Girouard did not see the obvious tattoos on his neck. However, Girourad's testimony indicated that Defendant had a hood pulled over his head during the robbery, but that he removed the hood and looked back at him as he drove away. Moreover, there is no evidence that would show that the tattoos were clearly visible at night considering the type of garment worn by Defendant.

Although Defendant did not file a motion to suppress the identification, he complains that the identification was tainted and relies on the five-factor test for determining the admissibility of a suggestive pretrial identification. In *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 812, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562 (2000), the supreme court stated:

> In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court held that an identification may be permissible, despite the existence of a suggestive pretrial identification, if there does not exist a "very substantial likelihood of irreparable misidentification." The factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Id.* at 114, 97 S.Ct. 2243.

In the instant case, Girouard testified that he was able to see Defendant's

8

face when he grabbed his car door and Defendant pointed a gun at him from inside the car. He testified that he was focused on Defendant and on preventing him from driving away with his car. Girouard stated that he was positive that Defendant was the man who took his car. He also positively identified Defendant in a photographic lineup eleven days after the robbery.

On the other hand, Defendant contends that Girouard's identification was suspect because he was drunk, it was dark, and he was at a Mardi Gras parade at the time of the robbery. He further argues that Girouard did not see the obvious tattoos on his neck. Despite this fact, the trial court determined that Girouard's testimony was credible and we will not second-guess the trial court's credibility determinations.

**Weight of Alibi Testimony**

Defendant argues that the trial court failed to adequately consider the testimony of his alibi witnesses, Boudreaux and Laday. He claims that the witnesses established that he was in Baton Rouge when the armed robbery occurred in Lafayette on Sunday, February 10th. Thus, he contends that the witnesses' testimony, along with Girouard's questionable identification, established reasonable doubt as to his identification.

With regard to witness testimony, we have said:

> The trier of fact may accept or reject, in whole or in part, the testimony of any witness. *State v. Williams*, 452 So.2d 234 (La.App. 1 Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984). The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Tompkins*, 403 So.2d 644 (La.1981), appeal after remand[,] 429 So.2d 1385 (La.1982). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support

9

the requisite factual conclusion. *State v. Owens*, 606 So.2d 876 (La.App. 2 Cir.1992).

*State v. Hongo*, 625 So.2d 610, 616 (La.App. 3 Cir. 1993), *writ denied*, 93-2774 (La. 1/13/94), 631 So.2d 1163.

A review of the record reveals that the trial court chose to believe Girouard's testimony over that of Defendant's alibi witnesses. It is the role of the factfinder to weigh the credibility of witnesses and this court should not second-guess those credibility determinations beyond the sufficiency evaluations under the *Jackson* standard of review. Accordingly, we cannot say that the trial court abused its discretion. When viewing this evidence in the light most favorable to the State, we find that the evidence presented at trial was sufficient to support Defendant's conviction of armed robbery. Therefore, these assignments of error are without merit.

## EXCESSIVE SENTENCE

In his final assignment of error, Defendant contends that his sentence of thirty years at hard labor without benefit of probation, parole, or suspension of sentence is excessive. Although he neither objected to the length of his sentence at his sentencing hearing nor filed a motion to reconsider sentence as required by La.Code Crim.P. art. 881, we shall review Defendant's sentence for constitutional excessiveness pursuant to our decision in *State v. Graves*, 01-156 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, *writ denied*, 02-0029 (La. 10/14/02), 827 So.2d 420.

Defendant was convicted of armed robbery and sentenced to serve thirty years at hard labor for armed robbery. He could have been sentenced to a term of imprisonment from ten to ninety-nine years without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64. In sentencing Defendant, the trial court made

10

the following comments:

> Well, this has been a hard decision for me, and I had a lot of information to look at to decide what would happen to you. I've reviewed the guidelines for the crime of armed robbery, and I had decided at first to give you more time than this, but in an effort to let you get out at least when you are a fairly young man, I'm going to sentence you to thirty (30) years.

> The Defendant alleges that this sentence is excessive.

> The standard of review for Louisiana appellate courts in determining whether a sentence levied upon a particular defendant was excessive is the manifest-abuse-of-discretion standard. *State v. Guzman*, 99-1753 (La.5/16/00), 769 So.2d 1158. A trial judge has considerable latitude in imposing sentences within the constraints provided by law. *State v. Thompson*, 02-0333 (La.4/9/03), 842 So.2d 330. However, in *State v. Marshall*, 94-0461, p. 24 (La.9/5/95), 660 So.2d 819, 829, the Louisiana Supreme Court held that "[a] sentence may violate a defendant's constitutional right against excessive punishment even if it is within the statutory limit," *citing State v. Sepulvado*, 367 So.2d 762 (La.1979). Furthermore, under both United States and Louisiana law, a sentence is unconstitutionally excessive if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *State v. Handy*, 96-2505, p. 1 (La.1/6/97), 686 So.2d 36, 37, *citing State v. Dorthey*, 623 So.2d 1276 (La.1993).

*State v. Wilturner*, 03-719, p. 5 (La.App. 3 Cir. 11/5/03), 858 So.2d 743, 746.

Although the trial court did not specifically mention Defendant's pre-sentence investigation report, we note that the twenty-three-year-old Defendant is a second felony offender. In *State v. Valrie*, 99-226 (La.App. 3 Cir. 10/13/99), 749 So.2d 11, *writ denied*, 99-3236 (La. 4/20/00), 760 So.2d 343, we upheld a thirty-year sentence for armed robbery for a second-felony defendant. Based on the Defendant's status as a second felony offender and this court's ruling in *Valrie*, we cannot say that the trial court abused its discretion in imposing his sentence nor can we say that the

11

sentence makes no measurable contribution to acceptable penal goals. Accordingly, Defendant's sentence is not excessive and this assignment of error lacks merit.

## CONCLUSION

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**