STATE OF LOUISIANA
v.
DARREN O'NEAL DYKES
No. 2009 KA 1447.
Court of Appeals of Louisiana, First Circuit.
February 12, 2010.
Not Designated for Publication.
WALTER P. REED, District Attorney Covington, La, KATHRYN W. LANDRY Assistant District Attorney, Baton Rouge, La, Attorneys for State of Louisiana.
PRENTICE L. WHITE Baton Rouge, La Attorney for Defendant-Appellant. Darren O'Neal Dykes.
Before: CARTER, CJ., GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
The defendant, Darren O'Neal Dykes, was charged by amended bill of information with one count of possession of a firearm by a convicted felon (count I), a violation of La. R.S. 14:95.1, and one count of aggravated flight from an officer (count II), a violation of La. R.S. 14:108.1, and pled not guilty on both counts. Following a jury trial, on count I, he was found guilty of the responsive offense of attempted possession of a firearm by a convicted felon, a violation of La. R.S. 14:27 and La. R.S. 14:95.1, and on count II, he was found guilty as charged. Thereafter, the State filed a habitual offender bill of information against the defendant alleging he was a third-felony habitual offender on counts I and II.[1] The court imposed sentences on counts I and II, but vacated the sentences prior to sentencing the defendant as a habitual offender. Following a hearing, on count I, the defendant was adjudged a third-felony habitual offender under La. R.S. 15:529.1(A)(l)(b)(i), and was sentenced to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence. On count II, he was adjudged a thirdfelony habitual offender under La. R.S. 15:529.1(A)(l)(b)(ii), and was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The court ordered that the sentences on counts I and II would run concurrently. The defendant now appeals, challenging the sufficiency of the evidence on counts I and II. For the following reasons, we affirm the convictions, habitual offender adjudications, and sentences on counts I and II.

FACTS
On March 23, 2006, at approximately 11:30 a.m., St. Tammany Parish Sheriffs Office Deputy Hillary Mayo[2] conducted a traffic stop in St. Tammany Parish of a Lincoln automobile driven by the defendant, and in which Phillip Kualski Chatman and Hamadi Ingram were passengers.
St. Tammany Parish Sheriffs Office Corporal Jack Admire responded to the scene to assist Deputy Mayo. As Corporal Admire was pulling up behind Deputy Mayo's police car, the defendant suddenly drove off in the Lincoln, southbound on Highway 21. Corporal Admire activated his unit's siren and lights and pursued the defendant. According to Corporal Admire, during the ensuing chase, the defendant crossed into oncoming traffic on two occasions and travelled in excess of 90 miles-per-hour on a highway with a posted speed limit of 55 miles-per-hour. Corporal Admire also indicated that during the pursuit of the defendant on the highway, there was the potential that human life was endangered. After an approximately five-mile chase, the defendant pulled the Lincoln into Backroads Mercantile Grocery on Highway 21, and fled on foot. Deputy Mayo arrived at the scene and chased the defendant on foot, while Corporal Admire helped to secure the passengers of the Lincoln. After the passengers were secured. Corporal Admire radioed Deputy Mayo for his location. Deputy Mayo provided his location and indicated that the defendant had taken off his tennis shoes and climbed over an electrified fence. The defendant was captured after being tracked by a bloodhound.
A subsequent search of the Lincoln revealed a loaded Glock 9mm handgun in front of the driver's seat and a loaded Ruger 9mm handgun, with a Glock tactile laser, in front of the front passenger seat. Both weapons would have been accessible to the driver of the Lincoln. While being arrested, one of the passengers claimed that the guns belonged to him. During booking, the defendant falsely identified himself as `Tony Dykes."
Chatman testified at trial. He claimed that the Lincoln and the guns belonged to him, and that the defendant had only been driving the Lincoln for ten or fifteen minutes prior to the traffic stop. According to Chatman, the defendant had no idea that the guns were in the Lincoln. Chatman also disputed that the defendant exceeded 55 miles-perhour during the chase and denied that the defendant drove against the flow of traffic.
Emilda Matthews also testified at trial. She was one of the defendant's friends. She claimed she was following him in another vehicle when he fled from the police. She claimed that the defendant drove at approximately 55 miles-per-hour and travelled only approximately one-half mile or one mile down the road. She also disputed that the defendant drove against the flow of traffic during the chase.
The State and the defendant stipulated that at the time of the incident, the defendant was on parole supervision following his July 15, 2004 guilty plea to possession of OxyContin.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 1, the defendant argues that on count II, there was insufficient evidence that his refusal to bring the Lincoln to a stop endangered human life because Matthews testified that the defendant did not speed or drive into oncoming traffic during the chase. He does not dispute the sufficiency of the proof of the other elements of La. R.S. 14:108.1. In assignment of error number 2, the defendant argues that on count I, there was insufficient evidence of his actual knowledge of the firearms in the Lincoln or of his constructive possession of the weapons.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601, p. 2 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, XXXX-XXXX (La. 11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438). When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at 3, 730 So.2d at 487.
An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 2007-2306, pp. 1-2 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).
In regard to count I, we are also guided by State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251 (La. 1982), cert, denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). Therein, the Louisiana Supreme Court recognized the legitimacy of a "compromise verdict," i.e., a legislatively approved responsive verdict that does not fit the evidence, but that (for whatever reason) the jurors deem to be fair, as long as the evidence is sufficient to sustain a conviction for the charged offense. If the defendant timely objects to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict, the court overrules the objection, and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury. State ex rel. Elaire, 424 So.2d at 251.
In the instant case, the trial court charged the jury on attempted possession of a firearm by a convicted felon without a timely defense objection. Accordingly, on count I, we review the sufficiency of the evidence to support possession of a firearm by a convicted felon.
It is unlawful for any person who has been convicted of any violation of the Uniform Controlled Dangerous Substances Law that is a felony to possess a firearm or carry a concealed weapon. La. R.S. 14:95.1(A). OxyContin contains oxycodone. State v. Jarreil, XXXX-XXXX, p. 3 n.2 (La. App. 1 Cir. 9/12/08), 994 So.2d 620, 625 n.2. Possession of oxycodone is a violation of the Uniform Controlled Dangerous Substances Law that is a felony. See La. R.S. 40:964, Schedule II (A)(l)(o) (prior to amendment by 2008 La. Acts No. 67, § 1); La. R.S. 40:967(C)(2).
Whether the proof is sufficient to establish possession under La. R.S. 14:95.1 turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. State v. Johnson, XXXX-XXXX, p. 5 (La. 4/14/04), 870 So.2d 995, 998.
Constructive possession of a firearm occurs when the firearm is subject to the offender's dominion and control. Louisiana cases hold that a defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. Johnson, XXXX-XXXX at 5-6, 870 So.2d at 998-99.
Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle. La. R.S. 14:108.1(C) (prior to amendment by 2009 La. Acts No. 6, § 1). Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle exceeds the posted speed limit by at least twenty-five miles per hour and travels against the flow of traffic. La. R.S. 14:108.1(D) (prior to amendment by 2009 La. Acts No. 6, § 1).
After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession of a firearm by a convicted felon, aggravated flight from an officer, and the defendant's identity as the perpetrator of those offenses. In regard to count I, the State relied on the defendant's flight to establish his guilty knowledge of the firearms in the Lincoln. The defense argued that the defendant fled because he knew that marijuana was in the car and relied on the testimony of Chatman to defeat the defendant's guilty knowledge of the presence of the guns. The fact that the jury did not acquit the defendant on count I indicates that it found the testimony of Chatman unconvincing. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See Johnson, XXXX-XXXX at 7-8, 870 So.2d at 1000. In regard to count II, the defendant's argument requires that this court find that the jury erred in finding the testimony of the witnesses called by the defense less credible than the testimony of Corporal Admire. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429, p. 5 (La. App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. Further, in reviewing the evidence on counts I and II, we cannot say that the jury's determinations were irrational under the facts and circumstances presented to them. See State v. Ordodi, XXXX-XXXX, p. 14 (La. 11/29/06), 946 So.2d 654, 662. These assignments of error are without merit.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATIONS, AND SENTENCES ON COUNTS I AND II AFFIRMED.
NOTES
[1] Predicate #1 was set forth as the defendant's conviction, under Twenty-second Judicial District Court docket number 02-CR6-85072, for distribution of cocaine. Predicate #2 was set forth as the defendant's conviction, under Twenty-second Judicial District Court docket number 03-CR6-88141, for illegal use of weapons (two counts). The documents offered into evidence at the habitual offender hearing indicated that the defendant was convicted on predicate #1 on July 30, 2003 and pled guilty on predicate #2 on July 15, 2004.
[2] Deputy Mayo was killed in the line of duty prior to trial.